EDMUND S. BARRETT & al. *versus* JAMES E. BLACK.

After verdict, no defects in the declaration can be taken advantage of by motion in arrest.

The lessee of a private wharf, through whose procuration a vessel is hauled along side of his wharf, to be there loaded by him with his cargo, in accordance with a contract of affreightment, is liable to the owners for an injury occasioned to the vessel while loading, by grounding at low tide on rocks in the berth, which was represented by the occupant of the wharf to be safe, and not known by the owners of the vessel to be otherwise.

ON MOTION.

CASE, to recover for an injury to the schooner Eva Belle, while being loaded by the defendant, with ice at "Factory Island wharf," in the Saco river, in Saco, occupied by the defendant.

It appeared on the part of the plaintiffs, that plaintiff Barrett, one of the plaintiffs and owners, and master of the schooner Eva Belle, of 187 tons burthen, in May, 1868, met the defendant at Portsmouth, N. H., and agreed to take the Eva Belle to "Factory Island wharf," in Saco, where the defendant was to load her with ice for Washington, D. C., and pay the plaintiffs $1 per ton, the defendant to load and the consignee to unload; that, in answer to inquiries by Barrett, the defendant said there was plenty of water and

a good wharf to lie at; that the Eva Belle arrived at Steamboat wharf, Saco, the afternoon of May 10; that one Harvey spoke about rocks in the river near defendant's wharf; that the defendant declared there were no rocks, and told Barrett not to listen to anybody, that there was a good place for his vessel to lie and no rocks; that the next morning Barrett hauled the vessel round to Factory Island wharf, (which was occupied by the defendant under a lease from the proprietors,) and laid her against a shore or piece of timber, extending about eight feet from the wharf; that, soon afterwards, one Loring, defendant's superintendent and foreman, sawed off the shore and ordered the vessel hauled up to the wharf; that Loring declared there were no rocks, whereupon she was hauled in and the defendant commenced sliding in the ice upon a run; that, the next day, about 10 A. M., when about two-thirds of her cargo had been put on board, she began to leak so badly that the pumps could not keep her free, and water came into her as fast as the tide rose; that an engine company tried in vain to pump her out; that the cargo was removed, and a survey had, when she was towed to Portland, where her keel was found to be split for twenty-five feet, her butts opened, caused by strain while grounded on rocks; that the repairs cost $696, and a fair compensation for demurrage was $28 per day; that Barrett was never at Saco before; that the cause of the sinking was the grounding of the vessel on a sharp rock in the river, about six or eight feet from the defendant's wharf.

*Nathaniel Fernald*, called by plaintiffs, testified, substantially, that he was wharfinger on Factory Island wharf, and had been acquainted with it for twenty years; that, when a vessel lay at that wharf, it was necessary to spar her off eight or ten feet, on account of rocks, and so told the ·defendant when he first commenced business at that wharf.

*David Patterson*, called by the plaintiffs, testified, substantially, that he had been a stevedore, at Saco, for five years past, and worked on Factory Island wharf; had been there at all stages of the water; noticed where the Eva

Belle lay; have seen two granite stones about nine feet from the wharf; after the Eva Belle was hauled up to wharf, witness asked defendant if he was going to load along side that wharf, and he answered in the affirmative; that witness told defendant, if he did he would break her in two and have to pay for her; that defendant replied, she was a flat bottomed vessel and could lie along side of the wharf pretty well; that witness told defendant that a sharp vessel would lie there better than a flat one.

The defendant testified, substantially, that he leased the wharf in 1866, raised it three to four feet, put in 3600 tons of ice, chartered several vessels of heavier burthen, and loaded them with ice, contracted with Barrett at Portsmouth to take the Eva Belle to F. I. wharf in Saco, where witness was to load her with ice for Washington and pay $1 freight; told Barrett, river was like all New England rivers, narrow and rocky; that witness would not guarantee Barrett safely in and out of the river; told Barrett he could learn about the river by applying to one Weaver, who was then present; that Barrett then signed and delivered to the defendant a written memorandum of the following tenor: —

"I have this day chartered my schooner, Eva Belle, to carry a cargo of ice for James E. Black, from the port of Saco to the port of Washington, for a freight of $1 per ton, to be loaded and discharged."

Next saw Barrett at Steamboat Wharf. Harvey and Hodgdon present; Barrett said, "Harvey says you have got a bad place to load at;" witness replied, "Harvey, what have you been trying to frighten Captain Barrett for?". Barrett said Harvey told him there were only three or four feet of water at low tide and a rocky bottom; that witness replied there were six to seven feet of water at low tide and no rocks that would do any injury; that witness told Barrett to listen to no one but examine and sound for himself; that Barrett might shove off or lie in to wharf, that witness had loaded vessels there both ways; that witness had sounded all about the wharf but could find nothing which he thought

would injure a vessel; witness never heard of any vessel being injured there before; that witness believed it a safe place when the Eva Belle was there; witness had heard there were rocks there; the wharf had formerly been used as a place where the stone sloops loaded, and there was a rumor that a stone had been dropped from the stone sloops; one stone afterwards taken out by derrick; defendant built the houses on wharf.

The verdict was for the plaintiffs; whereupon the defendant moved that it be set aside as being against law and the weight of evidence.

*J. M. Goodwin,* for the defendant, contended that no legal cause of action is set out in the declaration, but the view of the Court renders a report of this branch of his argument unnecessary. He also contended that, to be entitled to a verdict, the plaintiffs must prove that the defendant made false representations of existing facts, with intention to deceive and defraud the plaintiffs, the defendant at the time knowing them to be untrue, and that the plaintiffs, relying upon these representations as true, were thereby deceived and damaged. Counsel cited *Parley* v. *Freeman,* 3 D. & E., 51; *Hammett* v. *Emerson,* 27 Maine., 309; *Evans* v. *Collins,* 5 Q. B., 820; *Taylor* v. *Ashton,* 11 M. & W., 401; *Cornfoot* v. *Fouke,* 6 M. & W., 358.; *Polhill* v. *Walter,* 3 B. & Adol., 114; *Freeman* v. *Baker,* 5 Barn. & Adol., 797; *Ward* v. *Center,* 3 Johns., 271; *Allen* v. *Addington,* 7 Wend., 10; *Patten* v. *Gurney,* 17 Mass., 182; *Tryon* v. *Whitmarsh,* 1 Met., 1; *Stone* v. *Denny,* 4 Met., 151; *Ewing* v. *Calhoun,* 7 Verm., 79; *Lord* v. *Colley,* 6 N. H., 99; *Larrabee* v. *Larrabee,* 34 Maine, 483; *Brown* v. *Castles,* 11 Cush., 348; *Pearson* v. *Howe,* 1 Allen, 207; *Moens* v. *Heyworth,* 10 M. & W., 147; *Ormrod* v. *Huth,* 14 M. & W., 651; *Smout* v. *Ilberry,* 10 M. & W., 1; *Barley* v. *Walford,* 9 Q. B., 197; *Russell* v. *Clark,* 7 Cranch, 69; *Young & al.* v. *Covell,* 8 Johns., 23; *Gallager* v. *Brunell,* 6 Cow., 346; *Medbury & al.* v. *Watson,* 6 Met., 247; *Hazard* v. *Irwin,*

18 Pick., 95; *Hart* v. *Tallmadge*, 2 Day, 381; *Weeks* v. *Burton*, 7 Verm., 67; *Benton* v. *Pratt*, 2 Wend., 385; *Wheelden* v. *Lowell*, 50 Maine, 505; *King* v. *Eagle Mills*, 10 Allen, 548.

There is no evidence of fraudulent intent on the part of the defendant.

His statements were not positive statements but matters of opinion.

The defendant does not impliedly warrant his wharf and bottom to be absolutely safe. Angell on Highways, §§ 272 and 273, and cases *infra;* Redfield on Railways, (3d ed.,) § 144 and notes; *McGinity* v. *Mayor of N. Y.*, 5 Duer, 674; *Metcalf* v. *Hetherington*, 5 H. & N., 719; *Buzzell* v. *Laconia Man'f. Co.*, 48 Maine, 113; *Townsend* v. *Sus. T. Co.*, 6 Johns., 90; *Gibbs* v. *Trs. of Liv. Docks*, 3 H. & N., 164. Distinction between liabilities of owners of private wharves and public wharves.

The plaintiffs had possession and control of their vessel, and had the rights and were subject to the liabilities arising therefrom. 1 Pars. Mar. Law, 233 and note.

When there is reason to believe the jury have fallen into error in regard to the law, or the nature and force of the evidence, a new trial will be granted; and, if the jury persist in rendering a verdict against the law, the Court will set it aside as often as thus rendered. *Coffin* v. *Phenix Ins. Co.*, 15 Pick., 291; *Cunningham* v. *Magoun*, 18 Pick., 13; *Bryant* v. *Commonwealth Ins. Co.*, 13 Pick., 550.

*Edwin B. Smith*, for the plaintiffs.

The burden is on the motor to show the error. *Munn* v. *Potter*, 34 Barb., 360; *Dickey* v. *Maine*, 46 Maine, 483; *Mann* v. *Witbeck*, 17 Barb., 388; *McGarthey* v. *Mason*, 4 Ohio, (N. S.,) 575.

Hence "no ground of new trial is more carefully scrutinized, or more rigidly limited," than that set forth in the motion in the case at bar. Hilliard on New Trials, 339; *Detastet* v. *Baring*, 11 East, 265; *Woodcock* v. *Nuth*, 8 Bing.,

Barrett *v.* Black.

170; *Campbell* v. *Spencer*, 2 Binn., 129; *Leeman* v. *Allen*, 2 Wils., 160; *Doe* v. *Strickland*, 8 M. G. & Sc., 742; *Gould* v. *White*, 6 Fost., 178.

To justify setting it aside, the verdict must be "clearly, palpably, decidedly and strongly against the evidence." Hilliard on N. T., 340.

" So much against the weight of evidence as, on the first blush of it, to shock the sense of justice." *Ib.* *Waters* v. *Bristol*, 26 Conn., 398; *Daley* v. *Norwich*, *Ib.*, 591; *Mann* v. *Witbeck*, 17 Barb., 388; *Smith* v. *Richards*, 14 Maine, 200.

The verdict will not be set aside, although the evidence might have brought the Court to a different conclusion. *Gould* v. *White*, 6 Fost., 178; *Wendall* v. *Moulton*, 6 Fost., 41; *Wendall* v. *Safford*, 12 N. H., 171; *Bishop* v. *Perkins*, 19 Conn., 300; *Whitton* v. *Old Colony*, 2 Met., 8; *Bryant* v. *Glidden*, 39 Maine, 458; *Milo* v. *Gardiner*, 41 Maine, 549; *Hill* v. *Nash*, 41 Maine, 585.

Nor where a new trial would probably reach the same result. *Brazier* v. *Clapp*, 5 Mass., 10; Hill. on N. T., 368; *Hunt* v. *Barrel*, 5 Johns., 137; *High* v. *Wilson*, 2 Johns., 46; *Glidden* v. *Dunlap*, 28 Maine, 379; *Handly* v. *Call*, 30 Maine, 9; *Franklin Bank* v. *Pratt*, 31 Maine, 501; *West Gardiner* v. *Farmingdale*, 36 Maine, 252.

There must be evidence of bias, passion, prejudice or mistake on the part of the jury to justify setting aside their verdict, as against the weight of evidence. *Weld* v. *Chadbourne*, 37 Maine, 221; *Sawyer* v. *Nichols*, 49 Maine, 212; *Beal* v. *Cunningham*, 42 Maine, 362; *Hovey* v. *Chase*, 52 Maine, 319.

Black, by his acts, (in hiring wharf, erecting ice houses thereon, &c.,) held out that the place was a suitable one for vessels of the class needed for his ice business to lie at; he induced Capt. Barrett to bring the Eva Belle there for Black's own benefit; these two facts alone would justify the verdict. Defendants held liable in just such a case in Massachusetts. *Carlton* v. *Franconia Iron and Steel Co.*, (re-

ported in the Boston Daily Advertiser of second of March last.)   *Gibbs* v. *Liverpool Docks,* 3 Exch., 164; *Wendell* v. *Baxter,* 12 Gray, 464; *Pittsburg* v. *Grier,* 22 Penn., 54.

"Where the testimony is contradictory and the credit of witnesses questioned, the Court will not set aside a verdict as against the weight of evidence." *People* v. *Townsend,* 37 Barb., 250; *Smith* v. *Tiffany,* 36 Barb., 23; *Lewis* v. *Blake,* 10 Boscw., 198; *Rowe* v. *Smith,* 10 Boscw., 268; *Glidden* v. *Dunlap,* 28 Maine, 379; *Williams* v. *Buker,* 49 Maine, 427.

APPLETON, C. J. — It is objected that the plaintiffs' declaration sets forth no sufficient cause of action. If so, the defendant should have demurred, for, after verdict, no defects in the declaration can be taken advantage of by motion in arrest.

The case comes before us on a motion for a new trial as against evidence. As no exceptions are filed, we must presume that proper and needed instructions were given.

It appears in evidence that the defendant, at Portsmouth, N. H., agreed with the plaintiffs to take their vessel to the defendant's wharf at Saco, there to be loaded by him with ice for Washington, D. C.; that the plaintiffs took the vessel there to be loaded, and caused the vessel to be hauled to his wharf; that the wharf was unsafe; that while the defendant was loading the vessel, without fault on the part of the plaintiff, and through the insufficiency of the wharf, the vessel was grounded on the rocks, whereby the same was materially injured, &c.

The plaintiffs contracted with the defendant to take their vessel to his wharf to be there loaded. If the plaintiffs were to pay wharfage, the defendant would be bound to exercise due diligence to keep his wharf safe for all who should have occasion to use it. *Wendell* v. *Baxter,* 12 Gray, 496. In *Chapman* v. *Rothwell,* El., Bl. & El., 168, the proprietor of a brewery was held liable in damages for injury and loss of life caused by permitting a trap door to

be open without sufficient light or proper safeguards, in a passage-way through which access was had from the street to his office. The ground of the decision was that the defendant, by holding out the passage as the approach to his office and brewery, invited the party injured to go there, and was bound to use due care in providing for his safety. In *Knight* v. *Portland & Saco Railroad Co.*, *ante*, p. 234, it was held that the railroad company was bound to keep the landing places safe and convenient for those who make use of their cars as a means of conveyance. "The keeper of an inn," observes BIGELOW, C. J., in *Sweeney* v. *Old Colony & Newport Railroad Co.*, 10 Allen, 368, "or other place of resort would be liable to an action in favor of a person who suffered an injury in consequence of an obstruction or defect in the way or passage, which was held and used as the common proper place of access to the premises." This general principle was again affirmed in *Elliot* v. *Pray*, 10 Allen, 378.

The same principle is affirmed by the English Courts. In *Indermauer* v. *Dames*, 1 Law Rep., C. C. P. Cases, 275, the defendant left a hole unfenced upon his premises, into which the plaintiff, being rightfully there, fell. *Held*, that inasmuch as the plaintiff was upon the premises in lawful business, in the course of fulfilling a contract in which he (or his employer) and the defendant both had an interest, and the hole was, from its nature, unreasonably dangerous to persons not usually employed upon the premises, but having a right to go there, the defendant was guilty of a breach of duty towards him in suffering the hole to be unfenced. In delivering his opinion in *Smith* v. *London and St. Katharine Docks Co.*, 3 Law Rep., C. C. P. Cases, 327, BOVILL, C. J., uses the following language; — "The case, then, stands thus; a gangway was provided by the defendants as the only access to their vessel. The defendants were aware that it was dangerous, the plaintiff was not. The plaintiff comes to the spot, finds the gangway there, proceeds upon

it, and falls into the water. The jury have found there was negligence on the part of the defendants and none on the part of the plaintiff. * * The gangway being placed there as the means of access to all persons having business on board the ship, it amounts to an invitation to persons having business on board the ship to go upon it, as was held with respect to the road in *Corby* v. *Hill*, 4 C. B. N. S., 556. The case comes, then, within the principle that persons inviting others on their premises, are answerable for anything in the nature of a trap."

But here the plaintiffs were at the defendant's wharf, at his request and for his benefit. In such case, the rule is clearly laid down in *Carlton* v. *Franconia Iron and Steel Co.*, 99 Mass. —— "The owner or occupant of land," observes Mr. Justice Gray, "is liable in damages to those coming to it, using due care, at the invitation, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of." The plaintiffs' vessel was at the defendant's wharf for his benefit and at his request. It was injured without their fault, in consequence of the dangerous condition of the wharf, which the defendant represented as safe and convenient, — for so we must assume the jury to have found the facts.

*Motion overruled. — Judgment on the verdict.*

WALTON, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.