## The Schooner Niantic.

*(District Court, D. Connecticut. March 25, 1881.)*

1. WHARF—LIABILITY OF OWNER.

Where a vessel voluntarily takes her own berth partly at the wharf of the consignee and partly upon the unwharfed outland of a third person, and neither makes a request for a berth nor inquiry for information, and the consignee does not know of her presence at the wharf, the latter is not liable because information was not furnished the master of the changed condition of the bottom in that neighborhood since the vessel had last lain at that wharf.—[ED.

*A. S. Cushman*, for libellants.

*Wooster & Torrance*, for defendant.

SHIPMAN, D. J. On the third day of September, 1880, the schooner Niantic, whereof the plaintiffs are owners, left South Amboy in good and sound condition, with a load of coal, to be delivered to consignees at the dock of the Ousatonic Water Company, at the port "opposite Derby," which is the manufacturing village of Shelton, in the town of Huntington. The Ousatonic Water Company own two wharves on the Housatonic river, a short distance apart, one called the upper wharf and the other called the lower wharf. The land south of and adjoining the lower wharf is owned by one Nelson Hinman, is unwharved out, and is the natural sloping river bank.

The Niantic and her captain, Lyman R. Beebe, had theretofore made frequent trips to Shelton, and had lain safely at the lower wharf. The last previous trip was made in May, 1880. The tide ebbs and flows in the Housatonic river. At high tide there is enough water; at low tide, vessels of seven feet draught lying at the wharf always ground. Previous to September, 1880, the Niantic, lying in front of the wharf, had always grounded, but the bottom was level, and she had always lain safely. Between May, 1880, and September, 1880, the defendant, in order to make a deeper berth in front of the lower wharf, dredged out the bottom, but did not dredge but a few feet, if any, below the south line of the wharf, and in front of the said land of said Hinman. There is no evidence that the berth in front of the wharf was not sufficiently level for vessels to lie there in safety.

The Niantic reached Shelton about 3 o'clock in the afternoon of September 6th, at high water. The tide had begun to ebb. The next high tide was about 4 o'clock A. M. A schooner called the Florence was occupying the front of the lower wharf, and was discharging her cargo. The captain of the Niantic reported to his consignees, and was told that the Florence would probably be through by noon of the next day. He moored his vessel below the Florence, his bowsprit extending over the stern of the Florence, and the stern of the Nian-

tic being being about 32 feet below the south end of the wharf; and opposite the land of said Hinman. The Niantic was 100 feet long, and drew, when loaded, eight feet of water. The Florence was about 75 feet long and 27 feet broad. The Niantic had not previously lain so far below the end of the wharf by eight feet. Captain Beebe did not know that any dredging had taken place. He asked nobody where he should moor his vessel. No officer or agent of the defendant was present when he moored, and there is no evidence that any such officer or agent knew that he had moored, or was at the wharf. Apparently there is no wharf master or other person in charge of either of these wharves. It was low water at about 8 o'clock in the evening. The captain knew nothing of any injury to his vessel during low water, or during the night, but when he came on deck the next morning, about 6 o'clock, he found that she was leaking, and soon after that she was strained and broken amidships. She filled with water and sank. Afterwards the cargo was discharged, and she was raised and repaired with considerable expense and delay. At low water there were two and one-half feet of water under her stern. From that point the water increased in depth until it was six and one-half feet deep abreast of the main rigging. At the forward rigging there were four and one-half feet. There was a gradual slope from the main rigging to this point. It did not appear that the Niantic could not have lain safely at the upper wharf. If the captain had known of the uneven character of the bottom, there is no question that he could have found a safe place to lie in. The accident was caused by the fact that she was lying too far below the wharf, so that her stern was in shallow water, where there had been no dredging. When she grounded she lay unevenly, her stem and stern being upon elevations, and she became strained amidships. At low water the fact is apparent that the dredging had not been continued far enough to make a good berth at that point.

The foregoing facts do not, in my opinion, make the defendant liable for the injury. The defendant is a riparian proprietor upon a navigable stream, and has a right by the

law of Connecticut to wharf out in front of its land to the channel, provided navigation is not impeded, (*East Haven* v. *Hemingway*, 7 Conn. 186; *Nichols* v. *Lewis*, 15 Conn. 137; *Frink* v. *Lawrence*, 20 Conn. 117; *Simons* v. *French*, 25 Conn. 346,) and to provide in front of its wharf a safe and convenient berth for vessels. It does not appear that it had not provided such a berth. If the injury had happened by reason of the unsafe condition of the land in front of the wharf, or of the unsafe condition of the access to such landing-place, which was known to the defendant and not to the plaintiffs, and was negligently suffered to exist, and of which no notice was given to the plaintiff, he using due care, the defendant would be liable. *Carleton* v. *Steel Co.* 99 Mass. 216. *Barrett* v. *Clark*, 56 Me. 498.

If the Niantic had been assigned by the defendant the place which she took, and had received an injury from the inequalities of the bottom, the defendant would have been liable. If a wharf master of the defendant had knowingly permitted the Niantic to occupy a berth known to be unsafe, though partly on land of a third person—the captain being ignorant of its unsafe condition—the rule is apparently the same. It would have been the duty of the wharfinger to give information of inequalities of the bottom which endangered the vessel. *Sawyer* v. *Oakman*, 7 Blatchf. 290.

When the Niantic voluntarily takes her own berth, partly upon the unwharfed out-land of a third person, and neither makes request for a berth nor inquiry for information, and the defendant does not know of her presence at the wharf, there is no liability because information was not furnished of the changed condition of the bottom in that neighborhood. Had the defendant, knowing the fact that the vessel was at the wharf, but not knowing where she was placed, been silent in regard to any change, a question would have arisen which is not in this case. The defendant being absent, and the libellant's captain making no attempt to gain information by soundings or by inquiry of any person, the charge of negligence rests upon him rather than upon the wharfinger.

The defendant, at the suggestion of the court, offered but

little evidence on its part, and left the question, so far as the present trial is concerned, mainly one of law, upon the testimony of the libellants.

The libel is dismissed, with costs.