HENRY W. SNOW *vs.* HOUSATONIC RAILROAD COMPANY.

A railroad company may be held liable for an injury to one of its servants, which is caused by a want of repair in the road-bed of the railroad.

If it is the duty of a servant of a railroad company to uncouple the cars of a train, and this cannot easily be done while the train is still, and he, in endeavoring to uncouple them while the train is in motion, steps between the cars and meets with an injury which is caused by a want of repair of the road-bed of the railroad, the court cannot rule as matter of law that he was careless, but should submit the question to be determined by the jury; although he continued in the employment of the company after he knew of the defect.

TORT to recover damages for an injury sustained by the plaintiff in consequence of a want of repair of the road-bed of the defendants' railroad.

At the trial in the superior court, before *Vose*, J., it appeared that the injury was received at a place in West Stockbridge where the railroad of the defendants crossed a highway, and near an intersection with the Hudson and Boston Railroad. The Western Railroad Company, as contended by the plaintiff, had a right under certain contracts to use the defendants' tracks and switches at this place, for the passing of their cars and engines, and for making up freight trains and distributing freight cars from the trains upon the different tracks uniting there. The plaintiff was employed by the Western Railroad Company to attend to the switches upon the defendants' railroad at this place, and to make up and distribute the freight trains for the Western Railroad. A plan was put into the case, exhibiting the position and distances of the various points referred to. At the place where the defendants' railroad crossed the highway, three lengths of plank had been laid down between the rails, and up to within about two inches of them, entirely across the highway; and one of these planks had become defective, and there was a hole in it, large enough to admit a man's foot. This hole had existed for more than two months, and the plaintiff had known of it for that length of time, and had complained of it to the repairer of the tracks of the defendants' railroad.

The plaintiff testified, amongst other things, that he was forty-seven years of age ; that he had been employed upon railroads in various capacities for twenty-three years ; that at the time of the injury he was engaged in distributing a freight train; that for the purpose of giving an impetus which should send the cars to the place where he wished them to be, he gave a signal to the engineer to back his engine ; that the engineer did so, setting the cars in motion at a very slow rate ; that while they were so in motion he stepped between the engine and the car next to it, at a short distance from the place where the hole in the plank was, for the purpose of uncoupling the cars, by taking out the pin by which it was connected with the engine ; that while in that position, endeavoring to get out the pin, the train continued in motion, and he had to take two or three steps with it; that as he pulled out the pin, and was stepping away, his foot was caught in the hole in the plank, and he could not get it out before the wheel of the tender ran over his leg, and so injured it that amputation became necessary; that the hole was partly filled by a knot, upon which he stepped, and which went down, and, as he pulled up his foot, the knot caught it, and he could not get it out; that after making the signal for the engineer to back his engine he made no signal for him to stop ; that he thought he should have time to get out the pin and get away before he got to the crossing; that he did not get away before he got to the plank because he had not time, but he did not recollect whether the pin stuck ; that he did not think anything about the hole at that time; that the mode of uncoupling trains which was adopted by him was a prudent one ; that there was no other mode of uncoupling them; that at this point it was an ascending grade, and the engine had to ease back, and that he could not have pulled out the pin if the cars had been still, unless the engine eased back ; and that it would have taken some little time to stop the cars by the brake, and then ease up by backing the engine, and take out the pin.

There was also other evidence as to the speed of the train, and the safety of the plaintiff's method of uncoupling the cars.

The judge ruled that upon this evidence the plaintiff could

not recover, and a verdict was accordingly returned for the defendants. The plaintiff alleged exceptions.

*H. W. Bishop*, for the plaintiff, cited, in addition to cases cited in the opinion, *King* v. *Boston & Worcester Railroad*, 9 Cush. 112; *Hayes* v. *Western Railroad*, 3 Cush. 270; *Keegan* v. *Western Railroad*, 4 Selden, 175; *Norris* v. *Litchfield*, 35 N H. 271; *Park* v. *O'Brien*, 23 Conn. 339; *Beers* v. *Housatonic Railroad*, 19 Conn. 566.

*J. D. Colt*, (*T. P. Pingree, Jr.*, with him,) for the defendants. The case of the plaintiff disclosed such want of care on his part as to defeat his action. [See cases cited in the opinion, 448.] Under the arrangement between the railroad companies, the plaintiff and the person whose duty it was to repair this crossing were to all intents fellow-servants. The road was in joint occupation; so that, when the Western Railroad Company sent their servants down there, they sent them on their own road. *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49. At all events, the risk was one which the plaintiff assumed by continuing his employment after notice of the defect.

Bigelow, C. J. There can be no doubt of the liability of the defendants to respond in damages to a party injured by reason of a defect in the highway caused by their misfeasance or nonfeasance. Every one who creates an obstruction to travel, by erecting barriers, making excavations or otherwise, in a public way, is guilty of causing a nuisance, and if special damages are thereby occasioned an action will lie against him. The remedy which the statute gives for such injuries against towns is only cumulative or additional to that which the party injured has at common law against the person by whose agency the obstruction or defect was caused or permitted to continue. 2 Chit. Pl. (6th Amer. ed.) 599. *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24, 33.

We think it equally clear that the defendants are not relieved of this liability to the plaintiff by reason of any relation which subsisted between him and them at the time of the accident, arising out of the employment in which he was engaged. In the first place, on the facts reported in the exceptions, it does not appear

that he was employed in any duty or service for or in behalf of the defendants. On the contrary, it is stated that he was in the employment of another corporation. The only connection shown to exist between the parties to this suit is, that the corporation by which the plaintiff was employed had a right to use a portion of the tracks of the railroad belonging to the defendants for certain specific purposes, by virtue of a contract, the precise terms of which are not declared, and that the plaintiff, when the accident happened, was actually engaged in using one of these tracks in making up freight trains, which was one of the objects for which the defendants allowed their road to be used under the contract referred to. On these facts, it is difficult to see how the doctrine applicable to a claim for damages occasioned by the carelessness of a fellow-servant, against a common employer, can have any bearing on the rights of the parties to this action. The case is not unlike that put by way of illustration in *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, 61, of a railroad owned by one set of proprietors, whose duty it was to keep it in repair, and used by another set of proprietors with engines and cars, paying toll to the owners of the road. In such case, the intimation of the court is very strong that a servant in the employment of the last named proprietors would have an action against the former for an injury caused by the negligence of one of their servants.

But, in the next place, a decisive answer to this ground of defence is, that it does not appear that the defect in the road, which was the proximate cause of the accident, was the result of any such negligence of a servant of the defendants, that they would be excused from liability. It was caused by a want of repair in the superstructure or road-bed between the tracks of the defendants' road, where it crossed the highway. In other words, the defendants neglected to keep a portion of their road, where it was necessary for the plaintiff to go in the discharge of his duties, in a suitable and safe condition, so that he could not pass over it without incurring the risk of injury. Now while it is true, on the one hand, that a workman or servant, on entering into an employment, by implication agrees that he will undertake

the ordinary risks incident to the service in which he is to be engaged, among which is the negligence of other servants employed in similar services by the same master, it is also true, on the other hand, that the employer or master impliedly contracts that he will use due care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service, and will also take due precaution to adopt and use such machinery, apparatus, tools, appliances and means as are suitable and proper for the prosecution of the business in which his servants are engaged, with a reasonable degree of safety to life and security against injury. Thus an owner of a steamboat would be liable to an engineer or workman in his employment for an injury occasioned by the use of a boiler which was clearly defective and insufficient. So a manufacturer would be subjected to a like liability by the use of imperfect or badly constructed machinery. And in like manner the proprietors of a railroad would be responsible for accidents happening by tracks improperly laid, or switches which were not constructed to operate with regularity and precision. The distinction on which this rule of law is founded is an eminently wise and just one. It is this : A workman or servant, on entering upon any employment, is supposed to know and to assume the risks naturally incident thereto ; if he is to work in conjunction with others, he must know that the carelessness or negligence of one of his fellow-servants may be productive of injury to himself; and besides this, what is more material, as affecting his right to look to his employer for damages for such injuries, he knows or ought to know that no amount of care or diligence by his master or employer can by possibility prevent the want of due care and caution in his fellow-servants, although they may have been reasonably fit for the service in which they are engaged. It is certainly most just and reasonable that consequences which the servant or workman must have foreseen on entering into an employment, and which due care on the part of the employer or master could in no way prevent, should not be visited on the latter. But it is otherwise where injuries to servants or workmen happen by reason of improper and defective machinery and

appliances used in the prosecution of a work. The use of these they could not foresee. The legal implication is, that the employer will adopt suitable instruments and means with which to carry on his business. These he can provide and maintain by the use of suitable care and oversight; and if he fails to do so, he is guilty of a breach of duty under his contract, for the consequences of which he ought in justice and sound reason to be responsible. Such we understand to be the rule of law, and the principles on which it is founded, as now fully established by authority. *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466. *Cayzer* v. *Taylor*, 10 Gray, 274, 282, and cases cited in note.

The case at bar, if the plaintiff could be justly regarded as in the employment of the defendants, clearly falls within that branch of the rule under which the employer is held responsible for injuries caused by the use of improper or defective means for the proper performance of the work or duty to be rendered by those engaged in his service. The place where the accident happened was intended to be used for the purpose of making up trains. It was necessary for the person whose duty it was to unshackle the cars, or to fasten them together, to pass and repass over the space covered with plank between the tracks frequently and with rapidity, and with his attention in great degree diverted from the surface over which he passed, and directed to the special duty or service of separating and uniting the cars, in order to prepare the trains for transit. The existence of such a defect as the evidence disclosed at the trial, being of a nature to obstruct the plaintiff in passing safely and rapidly over and between the tracks, and to hinder him in the performance of the service in which he was engaged, tended very strongly to show that the defendants had committed a breach of the implied obligation which rested upon them to provide a suitable place in which the plaintiff could perform his duty safely, in the exercise of due and reasonable care, and without incurring a risk which did not come within the scope of his employment. The omission of the defendants was analogous to a failure on their part to have and maintain safe and suitable tracks, switches or turnouts, or to construct and keep in repair stanch and sufficient

bridges. For such failure or omission they would be clearly liable in damages to a person in their employment who might be injured thereby, according to the principles and authorities already referred to. As the case stood, therefore, at the trial, there was evidence offered by the plaintiff which tended very strongly to show that the defendants had been guilty of negligence and a breach of duty, which would render them liable to the plaintiff in this action.

It is urged by the counsel for the defendants that the omission to repair the defect which occasioned the injury was the result of the negligence of the person whose duty it was to see that the planks across the highway were kept in a safe and proper condition, and that the accident was therefore caused by the carelessness of a fellow-servant. But this argument leaves out of sight the real ground on which the liability of the defendants rests. If the argument is well founded, then it would follow that, as a corporation can act only by agents or servants, it would escape all responsibility for every species of injury caused by defective machinery and apparatus, or badly constructed tracks, or insufficient bridges and other similar causes. So an individual could avail himself of a similar immunity, if he conducted his business exclusively by agents or servants. But the rule of law does not lead to any such absurd result. The liability of the master or employer in such cases is founded, as has been already said, on the implied obligation of his contract with those whom he employs in his service. This requires him to use due care in supplying and maintaining suitable instrumentalities for the performance of the work or duty which he requires of them, and renders him liable for damages occasioned by a neglect or omission to fulfil this obligation, whether it arises from his own want of care, or that of his agents to whom he intrusts the duty. But it does not extend so far as to require of him that he should be responsible for the negligence of his servants, if of competent skill and experience, in using or managing the means and appliances placed in their hands in the course of their employment, if they are neither defective nor insufficient.

The only remaining question is, whether there was anything

in the acts or conduct of the plaintiff, at the time he received the alleged injury, which showed a want of due care on his part, sufficient to defeat his right to recover damages, and to warrant the court in withholding the case from the consideration of the jury. We think it very clear that there was not. There is a class of cases involving the question of the exercise of proper care on the part of a plaintiff, in which it is not only the right but the duty of the court to decide as a matter of law that the plaintiff has failed to maintain his action, and to direct a verdict for the defendant. These are cases where, upon the uncontradicted evidence, it appears that the plaintiff was guilty of a want of due care, and thus fails in proving an essential legal element in his case. In such an aspect of the evidence, it is the duty of the court to pronounce on its legal effect. It is certainly difficult if not impossible to lay down any general rule which shall be of easy application to every case which may arise. It may be said generally, however, that where the admitted or uncontroverted facts of a case show that the acts and conduct of a plaintiff, at the time of an alleged injury, and contributing to produce it, are such as to indicate, according to the common experience and observation of mankind, a want of due and reasonable care, adapted to the circumstances in which he is placed, he does not show any legal cause of action, and it is the duty of the court in such a state of the proof to direct a verdict for the defendant. Of this character are all the cases heretofore decided in this court, where such course has been pursued. In *Lucas* v. *New Bedford & Taunton Railroad*, 6 Gray, 64, the plaintiff was injured while attempting to leave a train after the locomotive had begun to move it. A similar state of facts was proved in *Gavett* v. *Manchester & Lawrence Railroad*, 16 Gray, . In *Todd* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 18; S. C. 7 Allen, 207, a passenger was injured in consequence of having protruded his arm outside of the window of the car while the train was in rapid motion. In *Gahagan* v. *Boston & Lowell Railroad Co.* 1 Allen, 187, a traveller on the highway undertook to pass between cars in motion, propelled by an engine, having no sufficient reason for making so hazardous an attempt. In

all these cases the conduct of the plaintiffs was inconsistent with that degree of common care and prudence which men ordinarily adopt when placed in similar circumstances.

But the case at bar falls within a different category. The plaintiff, when the accident occurred, was in the performance of a duty or service which required him to step between the cars and the engine of a train, for the purpose of uncoupling them by drawing the bolt which held them together. This, it appears, could not be done when the train was standing entirely still, but it was necessary for the engine to move so as to loosen the bolt sufficiently to enable him to withdraw it from its socket, and he was engaged in performing that service in the usual and ordinary mode, when he was thrown down by reason of the defect in the road. A case of this sort is not within common observation and experience, and cannot be judged of by the ordinary rule or standard applicable to persons who are only passengers or travellers, and who are engaged in no special or particular service. If, for example, a passenger should meet with an injury in attempting to pass from one car to another while the train was going at a high rate of speed, his act would be deemed by every one an imprudent one, and so manifestly wanting in proper care that he could not recover damages from the railroad company, although some negligence or want of due care on their part might have contributed to the injury. But if a conductor of a train, whose duty it is to pass from one car to another, should while doing so meet with a similar accident from a similar cause, it could not be properly said that he was guilty of negligence in passing from car to car while the train was in motion. That he was required to do by the nature of the service in which he was engaged; and the question of negligence would depend on other considerations, growing out of the peculiar circumstances of the case. So, in the case at bar, if the plaintiff had been a traveller or bystander, and without any sufficient reason or excuse had gone between the car and engine when they were in motion, and had there received an injury, it would be too clear to admit of question, that the consequences of any accident which happened to him would fall

exclusively upon himself. But as the plaintiff was in the discharge of his duty in placing himself in a perilous position — a duty the performance of which was known to and sanctioned by the defendants — the fact that he was in such position has no tendency to prove that he was negligent or careless. The question of due care in such case depends on the manner in which the plaintiff performed the duty incumbent on him whether he acted with due skill and caution, and conducted himself in the usual and ordinary way in which similar acts are done by persons engaged in like employment; and on other considerations of a like character, which do not fall within the range of ordinary observation and experience. The question of negligence was therefore a proper subject of evidence, and should have been submitted with proper instructions to the jury for their determination.

Nor do we think that it was any the less a question of fact to be decided by the jury, because it appeared that the plaintiff had previous knowledge of the defect in the road which caused the accident. *Reed* v. *Northfield*, 13 Pick. 98. *Smith* v. *Lowell*, 6 Allen, 40. This certainly was a circumstance to be taken into consideration, but by no means a decisive one. If the service to be performed by the plaintiff was of a character to require that his exclusive attention should be fixed upon it, and that he should act with rapidity and promptness, it could hardly be expected that he should always bear in mind the existence of the defect, or be prepared at all times to avoid it.

It may be suggested that the plaintiff ought not to recover, because he continued in the performance of his duties after he was aware of the existence of the defect in the road. There may be cases where a servant would be wanting in due care by incurring the risk of injury in the use of defective or imperfect machinery or apparatus, after he knew it might cause him bodily harm. But we do not think this case is one of that class. His continuance in the employment did not necessarily and inevitably expose him to danger.

On the whole case, as presented to us, we are of opinion that the verdict for the defendants should be set aside, and a

*New trial granted.*