CARSTENS PACKING CO. v. SWINNEY.

(Circuit Court of Appeals, Ninth Circuit. February 20, 1911.)

No. 1,876.

1. **MASTER AND SERVANT (§ 270\*)—ACTION FOR INJURY TO SERVANT—EVIDENCE —STATUTORY DUTY TO GUARD DANGEROUS MACHINERY AND APPLIANCES.**

In an action by an employé against a packing company to recover for an injury received by falling into an unguarded vat of glue, based on Rem. & Bal. Code Wash. §§ 6587, 6594, which require the operators of factories, mills, etc., to maintain reasonable safeguards for all vats which it is practicable to guard and which can be effectively guarded with due regard to their ordinary use, and make owners violating such requirements liable to employés who sustain injuries by reason thereof, the reasonable practicability of safeguarding the vat where the injury occurred was an issue in the case, and evidence that it was so safeguarded by defendant after the injury was competent and admissible, where it was properly limited to such issue by the instructions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 918; Dec. Dig. § 270.\*]

2. **MASTER AND SERVANT (§ 289\*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action by an employé against his employer to recover for an injury received when he was in a dangerous place but one where he was required to go in the discharge of his duty, the facts that he was there, that he knew of the danger, and was injured, did not require the court to hold as matter of law that he was chargeable with contributory negligence; but, in the absence of evidence of any specific act of negligence on his part, that question was properly submitted to the jury under instructions defining his duty to exercise care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 204*)—ASSUMED RISKS—FAILURE OF MASTER TO COMPLY WITH STATUTORY REQUIREMENT TO SAFEGUARD MACHINERY.

Under Rem. & Bal. Code Wash. §§ 6587, 6594, which requires the operators of mills, factories, and workshops where machinery is used to provide reasonable safeguards for machinery, vats, etc., where it is practicable to guard it, and make them liable for injuries to employés who sustain injuries by reason of the violation of such requirement, an employé does not assume the risks of the employment which arise out of the failure of the employer to comply with such statute, nor is he charged with assumption of such risks because of his failure to notify the employer of the unguarded condition of the machinery where it had never been guarded.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action at law by G. C. Swinney against the Carstens Packing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in the court below, plaintiff in error here, is a corporation owning and operating a packing house near the city of Tacoma, in the state of Washington, producing meat, glue, and other articles for the market. On the top floor of one of its buildings in its packing house are located glue works, consisting in part of glue tanks, where glue is boiled and prepared. The tanks extend about three feet above the floor of the room where they are located, and there are four such tanks arranged in a row. These tanks are filled with glue stock carried from an elevator by wheelbarrows running over a platform at the back of the tanks. In the process of filling the tanks, the platform becomes slippery at times from the glue stock falling upon it from the wheelbarrows. In the production of glue the tanks are heated to a boiling point, and during the boiling process the glue and glue material used for the production of glue fill the tanks nearly to the top. At the time of the plaintiff's injury these tanks had never been covered.

In the performance of his duties the plaintiff was required to go upon and along the platform for the purpose of oiling the shafting and other bearings in that locality. At the time of the accident, the plaintiff, in the performance of his duty, had proceeded along the platform and had oiled the bearings of the shafting and elevator, and, while in the act of turning around and away from his position of oiling the latter bearing, he stepped upon a plank which had been left upon the platform. This plank slipped under him and carried him into one of the tanks which at that time contained about 30 inches of boiling liquid glue. The heated glue so scalded his right leg as to require its amputation.

The statutes of Washington, providing for protection and health of employés in factories, mills, etc., has the following provisions:

"Section 1. Any person, firm, corporation or association operating a factory, mill or workshop where machinery is used shall provide and maintain in use * * * reasonable safeguards for all vats, * * * which it is practicable to guard and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employés therefrom, and with which the employés of any such factory, mill or workshop are liable to come in contact while in the performance of their duties." Remington & Ballinger's Ann. Code & Statutes, § 6587.

"Sec. 8. Any person, firm, corporation or association who violates or omits to comply with any of the foregoing requirements or provisions of this chapter, and such violation or omission shall be the proximate cause of any injury to any employé, shall be liable in damages to any employé who sustains injuries by reason thereof." Remington & Ballinger's Ann. Code and Statutes, § 6594.

In his complaint the plaintiff alleged that the defendant owned and operated the packing house and charged that it carelessly and negligently failed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to provide and maintain the safeguards for the vats as required by the statute.

The defendant in his answer admitted the ownership of the buildings and its packing house, and of the arrangement of the glue tanks and their operation; but denied the other allegations of the complaint; admitted the injury to the plaintiff; but charged him with wanton recklessness and carelessness in the performance of the work in which he was engaged, and alleged that he assumed all the risks incident to the work.

On the trial of the case the jury rendered a verdict in favor of the plaintiff in the sum of $7,500. The defendant brings the case here upon writ of error.

O. G. Ellis, John D. Fletcher, and R. E. Evans, for plaintiff in error.

Govnor Teats, Hugo Metzler, and Leo Teats, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It is assigned as error that the court admitted testimony on the part of the plaintiff, over the objection of the defendant, to the effect that subsequent to plaintiff's injury the defendant had covered the vats, including the one into which plaintiff fell.

The statute of Washington providing for the protection and health of employés in factories, mills, etc., requires reasonable safeguards for all vats which it is practicable to guard, and which can effectively be guarded with due regard to the ordinary uses of such machinery and appliances. Whether these vats could be reasonably safeguarded against the dangers they presented to employés by reason of being open and uncovered was, under the provisions of the statute, an issue in the case. The plaintiff, to prove that they could be so safeguarded, introduced testimony that they had been covered since the accident. This was the best testimony that could be produced upon that issue and was clearly admissible. The objection that the testimony was prejudicial to the defendant, intending to prove an admission on the part of the defendant of a previous neglect of duty, cannot be sustained in a case of this character. The testimony was not introduced for that purpose, and the court expressly instructed the jury that it was not to be so considered. The instruction given by the court was as follows:

"The court has permitted evidence to the effect that covers for, since the accident to the plaintiff, have been placed over the vats. This evidence has been admitted only for the purpose of bearing upon the question of whether at the time of the injury it was practicable to guard the vats, and whether they could be effectively guarded with due regard to the ordinary use of such machinery and appliances. The evidence was admitted only for that purpose. It should not be considered by you as being in any way an admission, or as tending to prove negligence on the part of the defendant; but it bears upon one of the facts which the plaintiff has to establish as a part of his case, namely, whether it was practicable to guard these vats, and whether they could be effectively guarded."

This instruction was in accordance with the rule established in the state of Washington. Erickson v. McNeeley & Co., 41 Wash. 509, 520, 84 Pac. 3; Thomson v. Issaquah Shingle Co., 43 Wash. 253, 257, 86 Pac. 588; Gustafson v. West Lumber Co., 51 Wash. 25, 28, 97 Pac. 1094.

The case of Columbia & Puget Sound R. Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405, cited by the defendant as authority for the rule that such evidence was inadmissible, is, we think, an authority for its admission. That case arose in the territory of Washington and long before the passage of the act by the state providing for the protection of employés in factories, mills, etc. The Supreme Court held, it is true, that, in an action for injuries caused by a machine alleged to have been negligently constructed, a subsequent alteration or repair by the defendant is not competent evidence of negligence in its original construction. But the court pointed out a distinction where the question was whether the defendant or some one else had a duty to perform with respect to the machinery or structure causing the injury. And this distinction is stated by the court in referring to the case of Readman v. Conway, 126 Mass. 374. In that case the plaintiff was injured by a defect in a platform in front of a building on land owned by the defendants, but occupied by tenants. The question was whether by the terms of the leases the landlords were to keep in repair the whole platform, or whether each tenant was to keep in repair the part in front of his establishment. The Massachusetts court admitted testimony over the objection of the defendant showing that after plaintiff's injury defendants made general repairs of the platform. It was held by the Massachusetts court that the acts of the defendants were in the nature of admissions that it was their duty to keep the platform in repair, and therefore competent. In other words, the evidence tended to point out the party whose duty it was to keep the platform in repair; and the Supreme Court of the United States held that this decision had no bearing upon the rule excluding evidence of negligence as shown by alterations and repairs subsequent to the injury.

In the present case evidence that the defendant covered the vats subsequent to the injury to plaintiff tended to show that the vats could be reasonably safeguarded by being covered, and that they could be so protected with due regard to the ordinary uses of such vats. The evidence tended to point out the duty of the defendant with respect to these vats. If a subsequent act is admissible to point out the party who is charged with a duty, where that question is an issue of fact, it seems to us that it is equally admissible to point out the specific duty with which the party is charged when that question is an issue of fact and the evidence is limited to that issue.

It is assigned as error that the court denied motions and refused instructions based upon the defense that the evidence established the fact that plaintiff had been guilty of contributory negligence, without which the injury complained of would not have been sustained. It is contended that the question of contributory negligence, under the evidence in the case, was not a question of fact for the jury, but one of law for the court. The trial court treated the question as a mixed question of law and fact; the first question being the standard of care required of the plaintiff. This was a question of law and was so determined by the court. The court instructed the jury as a matter of law that the plaintiff was required in the performance of his duties to exercise the care of a reasonably prudent person in conducting and

exposing himself to danger; that, the greater the danger of the situation, the greater the precaution and vigilance required; that it was his duty to use his senses, to use his eyes, so as to save himself from injury; that he had no right to go into a dangerous place, and shut his eyes and ignore the conditions; he was bound to take notice of those things which are open, visible, and apparent; and if a dangerous condition existed which was open and apparent to him, and he voluntarily placed himself in a position of great danger, when in the exercise of ordinary care he might have gone about his work in another way from a different position—a comparatively safe way—then he could not recover because he was guilty of contributory negligence.

The second question was one of fact, and was whether the plaintiff's conduct measured up to this standard of care and prudence. This was a question of fact for the jury to determine in view of all the surrounding circumstances. The question has been raised in some cases of this kind whether the defense of contributory negligence is admissible where failure of the defendant to comply with the requirements of the statute is the proximate cause of the injury to plaintiff. Caspar v. Lewin, 82 Kan. 604, 109 Pac. 657. But, as that question is not directly involved in this case, we will pass it by. What question of fact was the jury required to determine in this case? What act or omission on the part of the plaintiff is chargeable against him as contributory negligence? It was not the presence of the loose board on the platform onto which he stepped, nor the existence of the uncovered vat into which he was carried by the slipping board. There is no evidence tending in any degree to show that he contributed to the existence or condition of either of these proximate causes. There was also evidence tending to show that the platform was slippery, and that it was made slippery by glue stock falling upon it; but there was no evidence that the plaintiff was in any way responsible for that condition of the platform. What, then, was the charge of contributory negligence against the plaintiff? It is that he had been employed as an oiler at the place where he was injured for about three weeks, that he knew the platform was slippery, and that the place was dangerous. Upon this evidence it is contended that the plaintiff failed to use such a degree of care in passing over the platform as was required of him under the known dangerous conditions, and that the court should have so determined as a matter of law. As the plaintiff was in the discharge of his duty in placing himself in this perilous condition—a duty the performance of which was known to and sanctioned by the defendant—the fact that he was in such position had no tendency to prove that he was negligent or careless. Snow v. Housatonic Railroad, 90 Mass. 441, 450, 85 Am. Dec. 720. In that case the plaintiff was an employé of a railroad company and was engaged in performing the duties of a switchman. The proximate cause of the injury to the plaintiff was a hole in one of the planks laid down between the rails of the defendant's railroad where it crossed the highway, which had existed for more than two months to the knowledge of the plaintiff. Into this hole the plaintiff stepped while in the performance of his duties as a switchman, and was injured by the moving cars. It was held that, although the plaintiff continued in the employment of the company after he knew of the defect and

the danger it presented to him, the court could not rule, as a matter of law, that the plaintiff was careless; but the question should be submitted as a question of fact for the determination of the jury.

In the case of Gardner v. Mich. Cent. R. R., 150 U. S. 349, 360, 14 Sup. Ct. 140, 143, 37 L. Ed. 1107, the Supreme Court of the United States refers to this Massachusetts case and approved and applied the doctrine there declared, with this comment:

"The Supreme Judicial Court of Massachusetts held that the defendant was not relieved of its liability to the plaintiff by reason of any relation which subsisted between him and it at the time of the accident arising out of the employment in which he was engaged, because, among other reasons, it did not appear that the defect in the road was the result of any such negligence in the servant as to excuse the defendant, but was caused by a want of repair in the superstructure between the tracks of the defendant's road, which defendant was bound to keep in a suitable and safe condition so that plaintiff could pass over it without incurring the risk of injury. The liability was rested on the implied obligation of the master, under his contract with those whom he employs, to use due care in supplying and maintaining suitable instrumentalities for the performance of the work or duty which he requires of them, and renders him liable for damages occasioned by a neglect or omission to fulfill this obligation. whether it arises from his own want of care or that of his agents to whom he intrusts the duty."

The court said further:

"The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

In the case of Kreigh v. Westinghouse & Co., 214 U. S. 249, 257, 258, 29 Sup. Ct. 619, 53 L. Ed. 984, this doctrine was applied to a situation where the plaintiff was the foreman of a force of bricklayers engaged in the construction of a large brick building, which the defendant as principal contractor was erecting. At the time of plaintiff's injury, he and his men were engaged in laying the brickwork on the wall of the building. At the same time defendant's men were engaged in laying concrete upon the top of the roof. The material for this work was being hoisted to the roof by means of an engine operating a derrick with a rope and bucket attachment. The bucket was raised to a point a little higher than the top of the building, and then pulled inward onto the roof by means of a guy rope, attached to a boom carrying the bucket. When the bucket was emptied, it was swung out from the wall by means of an energetic push. While this work was in progress, the plaintiff, superintending the erection of a scaffolding for the men to work upon in the further construction of the wall, was standing upon a plank near the wall when the bucket was swung outward by a push from the men operating it, and the plaintiff was struck by the heavy bucket attached to the rope from the end of the boom, and was knocked off the plank and, falling a considerable distance to the ground, was severely injured. It was contended by the defendant that the injury to plaintiff was caused by his fellow servants, and that the defendant was therefore exempt from liability. It was further contended by the defendant that the plaintiff was guilty of contributory negligence on

evidence that the derrick was in plain view of the plaintiff upon the roof; that he had fairly admitted in his testimony that he knew that the men had rested the bucket on the roof, and that, of course, they would be soon sending it back; that he apparently became absorbed in the particular work in which he was engaged, and entirely oblivious of his surroundings; that he went along the wall to a point directly in front of the derrick and in the path of the bucket, turned his back upon the men, and gave his entire attention to what the people were doing, utterly unmindful of his own situation and safety.

With respect to the defense that the injury to the plaintiff was caused by fellow servants, the Supreme Court held that:

"If the negligence of the master in failing to provide and maintain a safe place to work contributed to the injury received by the plaintiff, the master would be liable, notwithstanding the concurring negligence of those performing the work."

The court held further that there was enough in the case to require its submission to the jury upon the question of fact involved in the charge of contributory negligence on the part of the plaintiff.

We think the evidence of contributory negligence in all these cases, particularly in the last one, was as strong if not stronger than the case before the court, and that, under the rule which these cases establish, the trial court was right in submitting the case to the jury upon the question of contributory negligence.

It is next contended that, as the dangerous conditions in the place where plaintiff was employed were open and apparent, he assumed the risk of injury under such conditions. This question was carefully considered and determined by this court in the case of Welsh v. Barber Asphalt Co., 167 Fed. 465, 93 C. C. A. 101. In that case the Legislature of the state of Oregon had adopted substantially the act of the state of Washington providing that factories, mills, and workshops where machinery was used should provide reasonable safeguards for machinery when it was practicable to guard the same. In that case the plaintiff's intestate was killed in operating a defective clutch in connection with an unprotected set screw. The trial court had admitted the defense that the deceased had assumed the risk of the employment in which he was engaged, and the jury returned a verdict for the defendant. This court reversed the judgment, holding that the purpose of the statute was to deprive the master of the defense of assumption of risk when an injury occurred as a result of the violation of its provisions. We can add nothing to what was said upon that subject in that case. The court instructed the jury in the present case that, when plaintiff entered the employ of the defendant, he did not assume that risk of the employment which arose out of the failure of the defendant to comply with the provisions of the act. This instruction was correct as declared by this court in the case referred to.

It is objected that the plaintiff is deprived of his right to claim that under the statute the defendant was charged with the risk attending the maintenance of the unguarded vats for the reason that the plaintiff did not notify defendant of its failure and neglect in this respect as provided in the statute. The failure of the defendant to guard the vats was not a temporary failure. The vats had never been covered.

It was an entire failure from the date of construction and not because of lack of notice from the plaintiff. This objection cannot be sustained. The failure of the plaintiff to give defendant notice of the unguarded condition of the vats under such circumstances does not prevent a recovery since the object of the notice was simply to secure an inspection by the Commissioner of Labor. McIntosh v. Sawmill Phœnix, 49 Wash. 152, 94 Pac. 930; Campbell v. Wheelihan-Weidauer Co., 45 Wash. 675, 89 Pac. 161.

It follows that the judgment of the Circuit Court must be affirmed, and it is so ordered.