[No. 12764.   Department One.   June 1, 1916.]

PAUL LINDBLOM, *by his Guardian etc., Respondent*, v.
HAZEL MILL COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLI-
GENCE—UNSAFE METHODS—QUESTION FOR JURY. It is a question for
the jury to determine whether an inexperienced youth, working for
one week as offbearer at an edger, was guilty of contributory negli-
gence in stepping into the space between the edger and the rolls and
placing his feet on the base of the edger frame to push a heavy cant,
instead of adopting a safer method by taking advantage of the mo-
mentum before it had stopped, where he had received no instruc-
tions and testified that he had no knowledge of a safer way; and it
is immaterial that he knew that unguarded saws were there where
if his foot slipped they would probably injure him, since it was not
incumbent on him to keep them at all times in mind.

SAME—FACTORY ACT — GUARDING SAWS — EVIDENCE — INSPECTOR'S
CERTIFICATE. The fact of a factory inspector's passing a mill having
an open backed edger without guard for the saws is only *prima facie*
evidence that the saws were guarded where practicable in compli-
ance with the factory act.

SAME—FACTORY ACT—GUARDING SAWS — FEASIBILITY — EVIDENCE.
The fact that larger edgers were safely operated with a board at the
back to guard the saws, and that a smaller edger was operated for
some months while so guarded, is competent to show that it was
feasible to use the guard on the smaller machine without added
danger to others.

NEGLIGENCE—COMPARATIVE NEGLIGENCE — INJURIES TO SERVANTS—
INSTRUCTIONS. Under the workmen's compensation act, 3 Rem. & Bal.
Code, § 6604-8, adopting the doctrine of comparative negligence in
certain cases, an instruction is as favorable to defendant as the law
warrants, where the jury were told that there may be a recovery not-
withstanding the negligence of the plaintiff, if he was exercising
ordinary care, and his negligence was slight in comparison with de-
fendant's negligence, and if so, and the defendant's negligence was
gross in comparison, and the plaintiff, although not exercising extra-
ordinary care, was in the exercise of ordinary care, he would be en-
titled to recovery.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS — INSTRUCTIONS.
Error cannot be assigned on an instruction to which no exception
was taken.

[1]Reported in 157 Pac. 998.

NEGLIGENCE—COMPARATIVE NEGLIGENCE. On conflicting evidence, both the fact and the degree of comparative negligence, where the doctrine obtains, are questions for the jury.

APPEAL—REVIEW—INSTRUCTIONS AS A WHOLE. Error cannot be predicated upon isolated parts of an instruction where other parts explicitly covered the point.

APPEAL—DECISION—PRESUMPTIONS PENDING APPEAL. A former decision holding the workman's compensation act constitutional, from which an appeal is pending in the United States Supreme Court, will be assumed correct until that court has decided to the contrary.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered September 19, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a sawmill. Affirmed. ·

*Hadley, Hadley & Abbott,* for appellant.

*Kellogg & Thompson,* for respondent.

ELLIS, J.—Action for personal injuries. Plaintiff, a youth of nineteen, came to this country from Finland in July, 1913. In the latter part of that month, he started to work for defendant. For a time he worked on the slab saw, and for seven days prior to the accident he worked as offbearer behind the edger. The edger machine ·contained four or five rapidly revolving saws and was used to cut large timbers, called cants, into narrower pieces and rip off the slabs. The timber was fed through a series of rolls in the edger machine, the lower of which were live rolls and forced the timber through the saws and finally out at the rear of the edger onto a platform of dead rolls. It was the duty of the offbearer to throw the slabs from the timber as it lay on the dead rolls and then, by means of a trip or lever, cause a series of small rollers revolving at right angles to the platform to lift on a slant and cause the timber to move sideways onto a set of live rolls by which it was carried away. There was an opening in the floor covering the whole space underneath the edger machine through which the sawdust and

splinters dropped into a conveyor below. The edger in question was fifty-two inches wide in the clear between the sides of the frame enclosing the saws. The frame was closed except at the back where there was an opening towards the dead rolls between the top of the cast iron base of the edger, which rested upon the floor, up to the live rolls in the edger. The iron base of the edger was about ten inches high. This opening was about fourteen inches wide and extended the whole width of the edger between the sides of the frame. The saws were about nine inches from this opening. There was a space between the dead rolls and the edger itself sufficiently wide to allow one to pass through. The evidence shows that even an experienced offbearer would occasionally find it necessary to get into this space and push the heavy cants forward onto the dead rolls before removing the slabs and tripping the timber to the offbearing rolls.

On August 23, 1913, a cant six inches thick and estimated by different witnesses at between two and three feet wide and between twenty-four and thirty feet long, which had passed through the edger and had been cut into six by six inch sections, failed to clear this space by six or eight inches. Plaintiff went into the space, and in attempting to shove the timber forward, placed his feet on the base of the edger frame below the opening. While so braced and pushing, his left foot slipped into the opening, coming in contact with the saws, which cut into the heel and the tibia and partially severed the great toe. At the time of the injury, defendant was in default in the payment of an assessment which had been made and demanded by the commission under the provisions of the workman's compensation act. Plaintiff elected to sue for damages under § 8 of that act. When all the evidence was in, defendant moved for a directed verdict, which was denied. The jury returned a verdict for $1,625. A motion for a new trial was overruled. From the judgment on the verdict, defendant appeals.

The appellant's contentions, though presented under many subdivisions, may be compendiously covered as follows: (1) That the respondent failed to exercise ordinary care; (2) that he failed to show that it was practicable to guard the opening in the edger, having due regard to its ordinary use and the danger to employees therefrom, as required by the factory act; (3) that appellant furnished a safe way to perform the work and respondent voluntarily chose a dangerous way; (4) that the court erred in giving a certain instruction; (5) that the workman's compensation act is unconstitutional.

There is evidence that the safe performance of the work in which respondent was engaged was not so simple as a mere observation might lead one to believe. One witness, an experienced offbearer, testified, in substance, that heavy cants often stopped before clearing the space between the edger and the offbearing rolls; that in such cases, when he was new at the work, he had often found it necessary to step into this space and push the cants clear of it before lifting the side rolls, but that by experience he learned how to avoid this and take advantage of the momentum of the cant as it left the edger by placing his hands upon it and keeping it moving so that it would clear the space without stopping. The respondent was a youth of nineteen years with only a few weeks of experience in any kind of mill work. He was not instructed as to this safer way of doing the work. He had received no instruction. He testified that he did the work as he had seen others do it. Whether, in view of his inexperience and lack of knowledge of the safer way, he was guilty of negligence in stepping into this space and bracing himself by placing his feet on the base of the edger frame in order to push this heavy cant was a question for the jury. Under no rule could he be held to the exercise of more than ordinary care for his own safety. Ordinary care in such a case would be that care which would be ordinarily exercised by a person of the same experience and knowledge under the same circumstances. Whether, under all the circumstances, he exercised ordinary

care was a question for the jury. *Erickson v. McNeeley &amp; Co.*, 41 Wash. 509, 84 Pac. 3.

Nor does the fact that he knew that the unguarded saws were there and that if his foot slipped he would probably be injured charge him with contributory negligence as a matter of law. He was not operating the edger. His mind was doubtless intent upon his own particular task. It was not incumbent upon him as a matter of law, "at all times to remember at his peril every unguarded device in the mill about which he was employed." *Rector v. Bryant Lumber &amp; Shingle Mill Co.*, 41 Wash. 556, 84 Pac. 7.

There was a sharp conflict in the evidence as to whether it was practicable to effectively guard the opening in the edger, having due regard to its ordinary use and the danger to employees therefrom. Several of appellant's witnesses, some of them experts, others not, gave it as their opinion that it would be impracticable to close this opening without great danger to other workmen; that, without the opening, splinters or large chunks would not have room to fly clear of the saws at the back and would be carried around by the saw teeth and thrown out through the front rolls when opened for the reception of the next cant, thus endangering the edger man or others in the mill working back of him. The deputy state factory inspector testified that he inspected the mill in August, 1913, and then noticed the open back of the edger. His testimony implies that he then passed the mill as meeting the requirements of the factory act, but no certificate to that effect of that date appears in the record. He again inspected it in October, 1913, and ordered the board which had been placed in the opening immediately after the accident to be removed because he thought it dangerous to other employees. So far as the record shows, the only actual certificate of inspection he ever gave passing the mill as meeting the act was on July 13, 1914, about a year after the accident, at which time the back of the edger was open. At any rate, his passing the mill and his certificate were only *prima*

*facie* evidence that the open backed edger met the requirements of the factory act. The appellant asserts that there was no competent evidence to the contrary. There was, however, evidence that other edgers, though larger than this one, were safely guarded by closing entirely, or the placing of bars or slats across the opening next to the offbearer's position.

Appellant contends that this had no tendency to prove that the edger here in question could have been so guarded, apparently assuming that, in the larger edgers, there is a greater clearance between the saws and the back of the edger. One witness testified that he thought there was a larger clearance in the larger machines, but admitted that he did not know. Another, who had worked on a larger machine for a long time the opening in which was guarded by perpendicular wooden slats, testified that the saws were only six or eight inches back of the opening. The fact that the larger machines were safely operated for long periods of time when so guarded was obviously some evidence that this small machine could have been safely operated when so guarded. In the absence of anything in the evidence showing a difference in the clearance, we cannot assume such a difference. It is true that verdicts may not rest upon pure speculation. It is also true that verdicts resting upon competent evidence may not be set aside upon pure speculation. *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054; *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091; *Sroufe v. Moran Bros. Co.*, 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L. R. A. 313; *Abrams v. Seattle & Montana R. Co.*, 27 Wash. 507, 68 Pac. 78. Moreover, the fact that this machine was effectively guarded by placing a board in the opening while being operated for several months after the respondent's injury, without any injury to other employees, was competent evidence that it was feasible to guard it without added danger to others. That this evidence was competent for this purpose, though not as an admission of past negligence in not

so guarding, is settled law in this state. *Erickson v. Mc-Neeley & Co., supra; Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588. Whether the saws could have been advantageously guarded under the factory act was one of the principal issues in the case. The evidence was conflicting. The question was for the jury. *Barclay v. Puget Sound Lumber Co.*, 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140; *Dolan v. Slade Lumber Co.*, 69 Wash. 22, 124 Pac. 133; *Rommen v. Empire Furniture Mfg. Co.*, 66 Wash. 48, 118 Pac. 924.

Section 8 of the workman's compensation act provides that in cases of this character the doctrine of comparative negligence shall obtain. 3 Rem. & Bal. Code, § 6604-8.

The court instructed the jury touching comparative negligence as follows:

"The law of comparative negligence is that there may be a recovery in a case of this kind although the person so injured may have been guilty of negligence, if he was at the time 'exercising ordinary care and his negligence was slight in comparison with the negligence of the defendant,' . . . and if on comparing the negligence of the plaintiff with that of the defendant the negligence of the plaintiff was slight in comparison with that of the defendant, and that of the defendant gross in comparison with the negligence of the plaintiff, and the plaintiff, although at the time not exercising extraordinary care, which was not required of him, was at the time in the exercise of ordinary care which the law required of him, then and in such case, the plaintiff would be entitled to recover in this case, and in such case, if you find it to be the case from the evidence by a fair preponderance thereof, your verdict should be for the plaintiff."

This instruction was as favorable to the appellant as the authorities warrant. 1 Thompson, Negligence (2d ed.), § 269 *et seq.;* 29 Cyc. 559; *Calumet Iron & Steel Co. v. Martin*, 115 Ill. 358, 3 N. E. 456; *Chicago v. Stearns*, 105 Ill. 554; *Stratton v. Central City Horse R. Co.*, 95 Ill. 25; *Illinois Cent. R. Co. v. Hall*, 72 Ill. 222. At any rate appellant took no exception to it, and it must be taken as a correct

statement of the law as applied to this case. Since, as we have seen, the evidence made a case for the jury, both on the question of the appellant's negligence and of respondent's contributory negligence, the question whether the one was slight and the other gross in comparison was also, under this instruction, one for the jury. Obviously the court, on conflicting evidence, can no more assume to make the comparison than it can assume to pass upon the question of negligence or contributory negligence. The degree of negligence is as much a question for the jury as is the fact of negligence, wherever the minds of reasonable men might differ on the subject.

The question as to whether there was a reasonably safe way of doing the work and the respondent voluntarily assumed a dangerous method is but a phase of the question of contributory negligence. This point is but vaguely and inferentially argued. It seems to be based upon the claim that respondent could have avoided going into the space between the edger and the dead rolls by using the trip or lever to incline the side rolls and using the pickaroon to pull the cants, a piece at a time, onto the offbearing live rolls. The respondent and another witness testified, in substance, that the space where he could usually reach the trip or lever with his foot was obstructed by other lumber so that he could not reach it, and that he was not furnished with a pickaroon. True, these things were denied by other witnesses, but the conflict of evidence on this point, as on other items going to contributory negligence, and as to whether, under all the circumstances, there was reasonable necessity for going into the open space to push the cants with the hands, made a question for the jury.

The only instruction complained of was to the effect that if it was practicable to guard the saws, "with due regard to its ordinary use and without impairing the same," and that employees thereat were liable to come in contact with the saws, then the certificate of inspection by the commissioner

of labor and the fact that the same was in force at the time of the injury would not of itself be a sufficient defense. It is argued that this instruction was fatally defective, in that it failed to leave to the jury the question whether the saws could have been guarded without danger to employees therefrom. It is true these words are included in the factory act, and if this were the only instruction on the subject there would be some force in appellant's criticism. Several other instructions, however, were given which covered this point explicitly, one of them using the exact language of the statute several times. We have so often held that error cannot be successfully predicated upon isolated parts of a charge that citation to the point seems unnecessary.

The claim that the workman's compensation act is unconstitutional is not discussed further than to indicate that it is raised for the purpose of saving the question in view of the appeal to the supreme court of the United States from our decision in *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, holding the act constitutional. Until that court has decided to the contrary, we must assume that our former decision is correct.

We find no error in the record warranting a reversal. The judgment is affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.