TOWN OF DOUGLAS, a municipal corporation, and the Western Casualty and Surety Company, a corporation, Appellants (Defendants below),

v.

F. A. NIELSEN, Appellee (Plaintiff below).

No. 3442.

Supreme Court of Wyoming.

Dec. 29, 1965.

R. R. Bostwick, of Murane, Bostwick, McDaniel & Scott, Casper, for appellants.

W. J. Wehrli, Casper, J. Patrick Hand, Douglas, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff below sought damages from the Town of Douglas for the value of his personal property destroyed by a fire which allegedly spread from the firing of the town's dump to plaintiff's lands. Trial being to the court without jury, plaintiff was given a money judgment against the town and its insurer, The Western Casualty and Surety Company. The defendants appeal contending there was insufficient evidence to support the judgment and there were errors of law by adverse rulings with reference to admissibility of evidence.

The record shows the town carried liability insurance authorized by c. 81, § 1, S. L. of Wyoming, 1961, then in effect although now repealed; that the town operates a municipal dump northeast of the town limits for the disposal of refuse and garbage by burning and destroying so much of the refuse and garbage as was combustible; that on December 6, 1963, the fire, set by the town for the consumption of the combustible refuse and garbage, escaped from the town's dump igniting surrounding grass and vegetation and spreading to plaintiff's lands where the fire continued to burn and consumed plaintiff's crop of hay and grass, some 360 line fence posts, and 11 corner posts, and damaged a quantity of fence wire; that a neighbor lady reported the fire to the town officials, and, although the town's employees were at the dump in the morning of December 6, 1963, nothing was done to see that the fire did not spread or to put out the fire; that when complaint had been previously made to the mayor of the dangerous fire condition at the dump, his response was that if there was any damage the town would be responsible, and other town officials made similar response; that the dump is located on high ground exposed to more wind than the lower ground; that on July 30, 1963, a fire from the dump had escaped and burned off probably 150 acres of range land before the fire department of the town got it under control; that plaintiff's lands are five-and-one-half miles from the dump; that prior to December 6, 1963, there seemed to be a fire burning continuously at the dump; that since December 6, 1963, the town has built an offset kind-of bird cage, a fence 7 feet high on two sides of the dump which consisted of 2-inch steel-wire mesh; that there were other prairie fires ignited from the dump, but the town controlled them before "they got away"; that the burned area on December 6, 1963, was continuous from the dump to the edge of plaintiff's lands and continued across plaintiff's lands; and that plaintiff filed a claim for his damages with the Town of Douglas, but the claim was denied.

From this brief reference to the evidence, it appears the town was negligent by burning and permitting the burning of refuse on its dump at an elevation exposed to the full force of high winds without taking adequate precautions to control and contain the burning area and to prevent

the fire spreading out of control over the surrounding territory. This negligence is emphasized by the evidence that only a few months prior to December 6, 1963, the fire spread from the dump, but due to efforts of the town's fire department damage was minimized and the spreading fire was brought under control. On December 6, however, even though in the morning the town's employees had been at the dump and knew the fire was in progress, and later the town officials had been warned of the spreading of the fire, the town negligently failed to take any steps to control its spread or prevent the damage about which this action is concerned until after the fire had spread out of control.

█ Although appellants complain there was impropriety in permitting the owner-claimant to testify as to the value of his destroyed property, this court in Shikany v. Salt Creek Transp. Co., 48 Wyo. 190, 45 P.2d 645, held an owner is prima facie qualified to give opinion as to value and to know value until the contrary appears. And in Blessing v. Pittman, 70 Wyo. 416, 251 P.2d 243, we said the weight of the owner's testimony was a question for the jury. Instead of the evidence tending to show the owner was not qualified to give opinion as to value of his destroyed property, the evidence was that as a rancher for many years he had experience in that business, knew the value of grass for the grazing of livestock; that with respect to his soil bank lands, he owned the grass, expected to use the grass, and took into account its value to him in feeding livestock; and that he knew how many animals could be pastured on a section of land, knew the going charge per month for running livestock, and he was familiar with the value of grass for raising livestock. Furthermore, the testimony of another rancher who had seen the grass on plaintiff's lands, both soil bank and other grasses, fully corroborated the owner's evidence.

█ Appellants' complaint of the court's interrogation of a witness is not well taken.

The examination of the witness by respective counsel obviously left some question as to whether the witness was taking into consideration certain factors which the court may have felt were of some importance. We know of no rule which prevents a court from asking questions in an effort to clarify points left unclear in its mind, particularly when the court itself is the trier of fact.

█ Complaint is made that it was improper to admit testimony that, because the dump was upon higher ground than surrounding areas, it had a greater exposure to high winds. The witness being familiar with the region was entitled to say what he had observed and experienced as a matter of fact. This was not opinion.

█ While plaintiff's testimony that he had not seen anyone guarding the fire certainly fell short of proving there had not been such a guard at the dump, it was a relevant fact within the knowledge of the witness and was thus properly admissible. The matter is one of weight, not of admissibility, and it was within the court's discretion to receive it on redirect examination.

█ Testimony that the town officials were warned of the danger of the spreading fire bore directly upon the town's negligence in doing nothing in time to prevent the fire damage to plaintiff's property.

In Annotation, 64 A.L.R.2d 1296, at p. 1300, the general rule is stated to be that evidence of precautions taken after an injury is inadmissible as evidence to prove negligence. It is also stated, at page 1303, that such evidence is sometimes excluded upon the theory that it is immaterial or irrelevant or that it is against public policy as tending to discourage improvements. Appellee, however, contends there is an exception to the rule where, as here, evidence of subsequent measures taken to prevent injury discloses a specific duty on the part of the town, citing Carstens Packing Co. v. Swinney, 9 Cir., 186 F. 50, 108 C.C. A. 152; and Zenier v. Spokane Interna-

tional Railroad Company, 78 Idaho 196, 300 P.2d 494, 498–499, where the court said, "Moreover, such evidence was material, not for the purpose of showing antecedent negligence on appellant's part, but as evidence of appellant's recognition of a defect which it was bound to remedy." Skottowe v. Oregon S. L. & U. N. Ry. Co., 22 Or. 430, 30 P. 222, 16 L.R.A. 593; Foster v. University Lumber & Shingle Co., 65 Or. 46, 131 P. 736. Also cited is the later case of Hatcher v. Globe Union Mfg. Co., 178 Wash. 411, 35 P.2d 32–33, the court saying:

> "Evidence of measures taken subsequently to safeguard an instrumentality which caused an injury is not admissible to prove negligence. Bell v. Washington Cedar Shingle Co., 8 Wash. 27, 35 P. 405; Carter v. [City of] Seattle, 21 Wash. 585, 59 P. 500. Such evidence is admissible, however, to show the practicability of safeguarding such instrumentality. Erickson v. E. J. McNeeley & Co., 41 Wash. 509, 84 P. 3, 5; Lindblom v. Hazel Mill Co., 91 Wash. 333, 157 P. 998. * * *"

Although entertaining some doubt that such evidence was proper in the case now before us, the question of whether its admission constitutes reversible error is affected by other matter appearing in the record.

When plaintiff was asked if he observed anything that had happened or anything that had been constructed in reference to the dump ground since December 6, 1963, and plaintiff had answered "Yes," plaintiff was then asked, "What have you seen?". Appellants' counsel then said, "I am going to object to the question as not probative in this case, as to what if anything has been done since the fire." The court overruled the objection. Appellants made no further objection, although in answer to numerous further questions concerning the erection of the fence at the dump, plaintiff described the fencing in some detail. Also, at a later time, another witness was interrogated at some length about the fence, without appellants making any objection. Furthermore, a defense witness was examined at some length concerning the replacement of the 3-foot-high fence at the dump with the 7-foot fence about which appellants' criticism is concerned.

■ Although it is not required that unnecessarily repetitive objections be made, still the single objection that the question had no probative value, followed by a complete failure to object to similar testimony given by other witnesses, coupled with testimony from appellants' own witness, hardly justifies a holding that permitting the initial question constituted prejudicial error. Appellants' counsel correctly says Wyoming has not, as yet, joined the majority rule excluding the questioned evidence. Under the circumstances under which the point is here raised, we do not think it advisable to directly pass upon it at this time.

■ Respecting appellants' insistence that improper and insufficient evidence was received to support the amount of the judgment, we have already held the testimony of plaintiff as to the values was proper. But appellants insist that when plaintiff said he did not know whether there was a fair market value for soil bank grass, he should not have been permitted to testify as to the value of such grass, citing McCormick, Damages, Hornbook Series (1935), pp. 165–170, and quoting out of context an isolated phrase which is entirely unjustified upon a reading of the whole discussion of which it is but a minor part. The text points out that "market value" is obviously a relative term not applicable to commodities which are not standardized such as crops in the field and otherwise explains why "market value" for a commodity like soil bank grasses "becomes a vague ideal rather than a reasonably definite standard." It therefore carries no surprise that plaintiff knew of no such "market value" for soil bank grasses, and the text refutes appellants' thesis that because of plaintiff's lack of such nonex-

istent knowledge his entire testimony as to values should have been disregarded.

■ Appellants believe there was error in permitting a witness to testify that two former mayors of the town had said the town would be responsible for damage caused by the dump fire, as well as permitting testimony that a deceased former attorney for the town had said the same thing. Appellants objected contending that any such statement attributed to a mayor would be a conclusion. The court permitted the answer, and the witness said the replies given were that the town would be responsible. Appellee's theory justifying the questions and answers is that they were incidental to the warning of danger the witness was giving the town officials, rather than to prove the town's responsibility through the answers of its officials. The question seems to be a close one. As a part of the conversation wherein the warning was being given, they were probably admissible, although the answers might not be binding upon the town. See Town of Glenrock v. Abadie, 71 Wyo. 414, 259 P.2d 766; 72 Wyo. 111, 262 P.2d 393. With respect to testimony as to the answers received from the deceased town-attorney, the answer paralleled those given by the town's former mayors and for the same reason may not be said to be prejudicial.

■ Appellants insist there is absent evidence that the town started the fire at the dump which spread to plaintiff's lands and destroyed his property. Whether the town or its servants started the fire is not important in the face of evidence that its employees were at the dump in the morning and knew the fire was burning.

■ There is no merit in appellants' contention that there was such an unusual wind as to be an intervening, independent or concurrent cause that ordinary negligence could not be predicated thereon. The evidence showed high winds were not unusual and there was no showing that any measurably higher winds were blowing on the day in question than had previously been experienced. In any event, this was a factual question for the court.

■ We do not agree with counsel that there was no evidence of negligent construction of the dump. The record shows the only barrier to prevent the spreading of fire, according to some testimony, was a 3-foot-high woven-wire fence with two barbs on top on the south and east sides of the dump with prevailing winds from the west and southwest "mostly." However, other evidence was that the fence was a little strip of woven wire about a foot high tramped into the ground.

■ Finally our examination of the record discloses ample evidence to support the values of plaintiff's destroyed properties to be as shown upon his claim filed with the town, except as to the number of acres of range-land grass. This exception is because plaintiff testified the range-land grass acreage was between 320 and 350 acres, whereas the claim showed 360 acres were burned. This possibly accounts for the court giving plaintiff judgment for only the round figure of $3,680, rather than the $3,752.75 claimed.

For the reasons stated herein, the judgment of the district court is affirmed.

Affirmed.

Mr. Chief Justice PARKER concurs in the result.